_____

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DIVISION, DISTRICT OF UTAH
_____

| | |
|---|---|
| ROBERT P. LOCKYER, an Associate Member of FINRA (Financial Industry Regulatory Authority), and ROBERT P. LOCKYER, an individual, : : : : Plaintiffs, vs. AXA ADVISORS, LLC, and AXA EQUITABLE LIFE INSURANCE COMPANY, and AXA NETWORK, LLC, and RYAN H. BECK, an individual, and RYAN H. BECK, OSJ an Associate Member of FINRA (Financial Industry Regulatory Authority), and RYAN H. BECK, Executive Vice President and Branch Compliance Manager, AZA Advisors, LLC, and RYAN H. BECK, AXA Equitable Life Insurance Company, and ETHAN HUNT, Branch Controls Specialist, AXA Advisors, LLC, and ETHAN HUNT, individual, GREGORY WILLISSON, HR Business Partner-Retail, AXA Equitable Life Insurance Company, and MIRANDE VALBRUNE, Director Employee Relations, AXA Equitable Life Insurance Company, and ANDREW CANNON EPPERSON, individual, and JOHN DOES 1-10, individuals, Defendants. | Civil No. 2:10-cv-00678 REPORT & RECOMMENDATION JUDGE CLARK WADDOUPS MAGISTRATE JUDGE BROOKE C. WELLS |

The following motions are currently pending in the above entitled case: (1) Defendants AXA Advisors, AXA Equitable Life Insurance Company, AXA Network LLC, Ryan H. Beck and Ethan Hunt's "Motion To Dismiss Amended Complaint And, In The Alternative, For A More Definite Statement";[1] (2) Defendant Andrew Cannon Epperson's "Motion To Dismiss Amended Complaint And, In The Alternative, For A More Definite Statement";[2] (3) Plaintiff Robert P. Lockyer's "Motion To Dismiss Defendants Aug 17, 2010 Memorandum As Argumentative";[3] (4) Plaintiff Robert P. Lockyer's "Claim Definitive Statement And Motion For Default Judgment Plaintiff";[4] and (5) Plaintiff Robert P. Lockyer's Motion To Appoint Counsel.[5] Each motion is addressed further herein.

## I. Background

As best the Court can discern from the amended complaint, plaintiff's dispute stems from his employment as an independent contractor with The Equitable Life Assurance Society Of The United States ("The Equitable"), a company acquired by AXA Network in 1999.[6] Through the course of his employment, plaintiff contends he

---

[1] Document Number 8. Defendant Mirande Valbrune joins in the AXA defendants' motion; Document Number 16.

[2] Document Number 10.

[3] Document Number 13.

[4] Document Number 12.

[5] Document Number 5.

[6] Document Number 9; ¶ 5.

developed "acne like lesions" on his face from a "slightly oily substance" referred to as "TOXINS" that were allegedly placed on his office telephone receiver.[7] In addition to the TOXINS, Mr. Lockyer asserts that "agents that affect the nervous system and possibly arsenic" were also placed on his office equipment resulting in his long-term health issues.[8] After installing a hidden camera in his office, plaintiff states that he was "shocked to discover that the Branch Controls Specialist, one of three Compliance persons in the Salt Lake Branch, was corroborating with John Does 1-10 as well as Epperson in these poisoning events."[9] Mr. Lockyer further asserts that defendants utilized Freemason and Latter Day Saints' ceremony rituals to "help coordinate the deliver of TOXINS to Lockyer's office equipment."[10]

Based upon these general events, on July 26, 2010, Mr. Lockyer filed an amended complaint alleging causes of action for: discrimination, employer negligence, destruction of criminal evidence, retaliation, breach of contract and attorney fees.[11] Thereafter, the matter was assigned to this Court by District Court Judge Clark Waddoups pursuant to 28 U.S.C. 636(b)(1)(B).[12]

---

[7] Document Number 2, ¶¶ 54-56.

[8] Document Number 2, ¶¶ 64-66.

[9] Document Number 2, ¶ 66-69.

[10] Document Number 2, ¶ 78.

[11] Document Number 2.

[12] Document Number 6.

**II. Defendants' Motions To Dismiss**

Defendants[13] move for dismissal of Mr. Lockyer's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."[14] When ruling on a motion to dismiss, "a court must determine whether the factual allegations in the complaint, if true, would entitle the plaintiff to a legal remedy."[15] Dismissal of a complaint is appropriate when "plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff."[16]

In general, if matters outside the pleadings are presented to the court a 12(b)(6) motion must be converted to a motion for summary judgment under Rule 56.[17] However, documents central to plaintiff's claim and referred to in the complaint may in fact be considered by the court on a motion to dismiss.[18] Mr. Lockyer has attached several documents to his complaint, including the "Agent Agreement" entered into

---

[13] All defendants except Mr. Gregory Willisson have filed their own, or joined in another, motion to dismiss. It also appears that defendant Miranda Valbrune was not served until September 2, 2010, and defendant Gregory Willisson was not served until September 20, 2010. Document Number 20.

[14] Fed R. Civ. P. 12(b)(6).

[15] M.A.C. v. Beitit, 284 F. Supp.2d 1298, 1304 (D. Utah 2003); *see also,* Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

[16] Cottrell, Ltd. v. Bitrol Int'l Inc., 191 F.3d 1248, 1251 (10th Cir. 1999)(citing, Yoder v, Honeywell Inc., 104 F.3d 1214, 1224 (10th Cir.), cert. denied, 139 L.Ed. 2d 19, 118 S.Ct. 55 (1997)).

[17] Fed. R. Civ. P. 12(d).

[18] GFF Corp v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997).

between himself and The Equitable. The Court considers the Agreement in the context of defendants' motions to dismiss, and does not convert the matter to summary judgment, as the Agreement itself is central to plaintiff's claims and referenced throughout the complaint

### A. Defendants AXA Advisors, LLC, AXA Equitable Life Insurance Company, AXA Network LLC, Ryan H. Beck and Ethan Hunt's Motion To Dismiss Amended Complaint And, In The Alternative, For A More Definite Statement.[19] [20]

Defendant AXA Advisors, LLC, AXA Equitable Life Insurance Company, AXA Network, LLC, Ryan H. Beck and Ethan Hunt (collectively referred to as the "AXA Defendants") move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's complaint in its entirety on the basis that "the allegations of the Amended Complaint are insufficient to state a claim or themselves demonstrate he has no claim upon which relief may be granted."[21] In the alternative, the AXA defendants request that plaintiff be required to file and serve a more definite statement of his claims pursuant to Rule 12(e).[22]

In response to the AXA defendants' motion, Mr. Lockyer filed a pleading entitled "Claim Definitive Statement And Motion For Default Judgment Plaintiff" wherein he challenges service of the defendants' motion and request the entry of default judgment

---

[19] Document Number 9.

[20] Defendant Miranda Valbrune joins in the Motion To Dismiss filed by defendants AXA Advisors, LLC, AXA Equitable Life Insurance Company, AXA Network LLC, Ryan H. Beck and Ethan Hunt; Document Number 16.

[21] Memorandum In Support, pg. 2; Document Number 10.

[22] Fed. R. Civ. P. 12(e).

against defendants.[23] Defendants have properly filed their motion to dismiss the complaint and entry of default judgment against any or all defendants is unwarranted.

### B. Defendant Andrew Cannon Epperson's Motion To Dismiss Amended Complaint And, In The Alternative, For A More Definite Statement[24]

Defendant Andrew Cannon Epperson, appearing pro se, has filed a separate motion to dismiss the content of which is essentially identical to the AXA defendants' motion to dismiss.

In response to Mr. Epperson's motion, plaintiff filed a pleading entitled "Motion To Dismiss Defendants Aug 17, 2010 Memorandum As Argumentative" wherein he moves the Court to dismiss Mr, Epperson's memorandum on the grounds that it contains "point of argument, not facts, better suited for the courtroom."[25] Mr. Lockyer also challenges Mr. Epperson's memorandum as being in the "spirit and style of AXA companies legal language which raises suspicion as to the motives of the Defendants statements as representation of all Defendants."[26]

### C. Causes of Action

Each cause of action set forth in the amended complaint, and challenged by defendants' through their respective motions, is addressed below.

#### 1. Religious Discrimination

Mr. Lockyer's first claim for relief entitled "Discrimination, Bias Toward Fellow

---

[23]Document Number 12.

[24]Document Number 11.

[25]Document Number 13.

[26]Document Number 13, pg 2.

Latter-Day Saints' Followers" alleges that defendants hold "LDS Temple Recommend cards from The Church of Jesus Christ of Latter Day Saints and are required to uphold his SECRET PROMISE in order to stay true to his religion."[27] Although unclear, Mr. Lockyer appears to assert a claim for religious discrimination. Title VII of the Civil Rights Act provides that it is unlawful for an employer to discharge an individual because of their religion.[28]

In order to state a claim under the Act, plaintiff must establish himself as an employee as defined by the Act.[29] Mr. Lockyer does not assert that he is an employee of AXA Advisors, LLC, AXA Equitable Life Insurance Company, or AXA Network LLC. To the contrary, the Agent Agreement establishes that plaintiff was an independent contractor with the AXA Network.[30] As a result, Mr. Lockyer has not met the preliminary requirement of establishing a claim for religious discrimination.

In addition to failing to establish himself as an employee, Mr. Lockyer also fails to allege a prima facie case of discrimination. From the pleadings it is impossible to tell whether plaintiff's claim is based upon an alleged failure to share the religious beliefs held by his supervisors, or whether it is a more "straightforward" discrimination case. Irregardless, plaintiff fails to establish a case for either form of discrimination.

---

[27] Amended Complaint, pg. 7; Document Number 2 ¶ 49.

[28] 42 U.S.C. 20003-2(a)(1). Plaintiff, however, fails to reference Title VII in the body of the amended complaint.

[29] "A Title VII plaintiff must establish as a preliminary matter that he is an employee as defined under the Civil Rights Act." Brackens v. Best Cabs, Inc., 146 Fed. Appx. 242, 244 (10th Cir. 2005); *see also*, 42 U.S.C. § 2000e(b),(f).

[30] Agent Agreement, Exhibit C; Document Number 2-3. "XVII Independent Contractor. Nothing contained herein shall be construed to create the relationship of employer and employee between The Equitable and The Agent."

In order to show discrimination plaintiff must allege "(i) that he belonged to a protected class; (ii) that his job performance was satisfactory; (iii) that he was discharged; and (iv) that, after he was discharged, the position remained open to similarly qualified applicants.[31]  On the other hand, in order to show discrimination based upon a failure to share religious beliefs held by his supervisors, Mr. Lockyer must allege: "(1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs."[32]

Mr. Lockyer's complaint does not set forth any factual allegations that comport with a cause of action for either form of religious discrimination and therefore his first cause of action is dismissed.  As an alternative ground for dismissal, Title VII does not impose individual liability and therefore plaintiff's claims for discrimination against the individual defendants must fail.[33]

### 2. Employer Negligence

The second claim for relief stems from plaintiff's alleged exposure to arsenic while cleaning his office area.  Mr. Lockyer contends that the exposure could have been

---

[31] Sahpolia v. Los Alamos Nat'l Lab, 992 F.2d 1033, 1038 (10th Cir. 1993) (citing, Starks v. George Court Co., Inc., 937 F.2d 311, 314-15 (7th Cir. 1991)).

[32] Shapolia v. Los Alamos Nat'l Lab, 992 F.2d 1033, 1038 (10th Cir. 1993).

[33] "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." Haynes v. Williams, 88 F.3d 898, 899-901 (10th Cir. 1996)(citing, Sauers v, Salt Lake County 1 F.3d 1122 (10th Cir. 1993)).

8

avoided if defendants had returned his calls for help. It is defendants alleged failure to respond that made them "negligent in protecting the health and welfare of their employees and Associates."[34]

To properly assert a claim of negligence, "plaintiff must establish four essential elements: (1) that the defendant owed plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages."[35] Mr. Lockyer's amended complaint fails to state a prima facie case of negligence and therefore his cause of action is dismissed.

Duty is the first element of a negligence claim and requires a showing that the defendant owed a duty of reasonable care to the plaintiff.[36] Absent a showing of duty, plaintiff cannot recover. A duty is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."[37] The existence of a duty is a matter of law to be determined by the court[38] after consideration of "the legal relationship between the parties, the foreseeability of injury, the likelihood of injury, public policy as to which party can best bear the loss occasioned

---

[34] Amended Complaint; Document Number 2, pgs. 13-14.

[35] Webb v. University of Utah, 2005 UT 80, ¶ 9; 125 P.3d 906, 909 (citing, Hunsaker v. State, 870 P.2d 893, 897 (Utah 1993)).

[36] Beach v. University of Utah, 726 P.2d 413, 415 (Utah 1986).

[37] AMS Salt Indus. Inc. v. Magnesium Corp. of Am., 942 P.2d 315, 320-21 (Utah 1997)(quoting, W. Page. Keeton et. al., *Prosser and Keeton on the Law of Torts* § 53 at 356 (5th ed. 1984)).

[38] Yazd v. Woodside Homes Corp., 2006 UT 47, ¶ 14; 143 P.3d 283.

by the injury, and other general policy considerations."[39]

In this case, Mr. Lockyer fails to establish the existence of a duty between himself and the defendants. As stated in the amended complaint, Mr. Lockyer unilaterally decided to clean his office area before receiving a return phone call from AXA's Human Resource department.[40] Then, it was only after he was allegedly exposed to the toxins that he emailed defendants with his claim of poisoning.[41] Without any knowledge of the secretly planted bacteria agents and poisons and with no obvious forseeability thereof, defendants could not have had a duty to address such potential dangers.

Additionally, the requisite element of causation is missing from plaintiff's negligence claim because there is no indication that his alleged injuries were caused by the existence of a poisonous substance in his office. While the question of proximate cause is generally one for the jury, a court may rule on the issue as a matter of law if there is "no evidence to establish a causal connection, thus leaving causation to jury speculation."[42] Attached to the amended complaint, plaintiff provides a doctor's note from internist Darrell G. Hensleigh, M.D. stating that while Mr. Lockyer's symptoms[43] are consistent with chemical exposure, "other causes are possible."[44] The issue of whether

---

[39] Normandeau v. Hansen Equip., 2009 UT 44 ¶ 19; 635 Utah Adv. Rep. 26 (quoting, AMS Salt Indus. Inc. v. Magnesium Corp. of Am., 942 P.2d 315, 321 (Utah 2007)).

[40] Amended Complaint, ¶98; Document Number 2.

[41] Amended Complaint, ¶100; Document Number 2.

[42] Steffensen v. Smith's Management Corp., 820 P.2d 482, 486 (Utah App. 1991)(citing Robertson v. Sixpence Inns of Am., Inc., 163 Ariz. 539, 789 P.2d 1040, 1047 (Ariz. 1990)).

[43] In his letter, Dr. Hensleigh indicates that Mr. Lockyer presented his symptoms as "nausea, dizziness and headache and also describes waves of sensation going through his body."

[44] Amended Complaint, Exhibit D; Document Number 2-4.

or not plaintiff was even exposed to chemicals, let alone whether such exposure occurred at his office are too speculative to support a claim for negligence.

For these reasons, the Court finds that Mr. Lockyer fails to state a cause of action for employer negligence and his claim is dismissed.

### 3. Destruction of Criminal Evidence

Plaintiff's third cause of action for "destruction of criminal evidence" asserts that defendants failed to inspect both the "evidence" and Mr. Lockyer's office in an attempt to "bury criminal evidence and corporate liability."[45]

No civil cause of action exists for a claim of destruction of criminal evidence and consequently Mr. Lockyer's third cause of action is dismissed for failure to assert a cognizable legal theory.

### 4. Retaliation For Filing Complaint

The fourth cause of action entitled "Retaliation for filing Complaint" appears to stem from defendants' failure to return plaintiff's February 23, 2009 phone call.[46] The complaint, however, is unclear as to how defendants' failure to return a phone call amounts to retaliation against plaintiff.

In support of his claim. plaintiff references the Financial Industry Regulatory Authority's ("FINRA") *"Whistle Blower Rule"*. Mr. Lockyer himself, however, acknowledges that the Whistle Blower Rule provides "no protection to Associate

---

[45] Amended Complaint, ¶ 107; Document Number 2.

[46] Amended Complaint, ¶112; Document Number 2.

11

Members employment or AGENT AGREEMENT who are subject to this violation".[47] Moreover, plaintiff fails to reference any citation which indicates that there are non-retaliation protections provided by FIRNA or show that FIRNA, a self regulatory organization, even provides for a private right of action.

Even if Mr. Lockyer's cause of action was brought pursuant to Title VII[48] or Utah's Anti-discrimination Act,[49] (neither of which are mentioned in the amended complaint) his claims would still fail since neither would not apply to plaintiff as an independent contractor. Moreover, to assert a prima facie case of retaliation, a plaintiff must show "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action."[50]

Mr. Lockyer's allegation that the defendants failed to return his phone call falls short of establishing any of these stated elements. Accordingly, plaintiff's claim for retaliation is dismissed.

### 5. Breach of Contract

The fifth claim for relief asserts a breach of contract occurred on March 2, 2009, when plaintiff was terminated from his employment during a conference call.[51]

A cause of action for breach of contract may only be asserted against a party to

---

[47] Amended Complaint, ¶115; Document Number 2.

[48] 42 U.S.C. § 2000e-3(a).

[49] Utah Code Ann. § 34-35-7.1

[50] Morgan v, Hilit Inc., 108 F.3d 1319, 1324 (10th Cir. 1997)(referencing, Berry v. Stevinson Chevrolet, 74 F.3d 980, 985 (10th Cir. 1996) (a Title VII case)).

[51] Amended Complaint, ¶ 116; Document Number 2.

12

the contract itself.[52] Here, none of the individual defendants, AXA Equitable nor AXA Advisors are a party to the Agreement between Mr. Lockyer and The Equitable signed on July 1, 1996.[53] Accordingly, a cause of action for breach of contract against those defendants is dismissed.

While defendant AXA Network was also not a signator to the Agent Agreement, it did assume all the rights and obligations of The Equitable, a signator to the original Agreement. Even so, plaintiff's claim that defendants announced his termination during a conference call and failed to provide an explanation for termination on a FINRA U5 form, do not support a claim for breach of contract against AXA Network. The terms of the Agent Agreement allow for termination "with or without cause" and do not require a specific explanation for termination.[54]

Mr. Lockyer does not reference any provisions of the Agent Agreement that were breached by the circumstances he alleges and therefore his fifth claim for breach of contract is dismissed.

### 6. Attorney Fees

Plaintiff's sixth claim for relief requests that the Court "award attorney fees in advance of other claims so legal counsel may be secured."[55] In general, attorney fees

---

[52] Horman v. Gordon 740 P.2d 1346, 1351 (Utah Ct. App. 1987); *See also,* Utah Code Ann. § 70A-3-401 (2010). "(1) A person is not liable on an instrument unless: (a) the person signed the instrument."

[53] Document Number 2-3.

[54] Agent Agreement, Exhibit C; Document Number 2-3.

[55] Amended Complaint, ¶ 125; Document Number 2.

are only recovered by a prevailing party when authorized by statue or contract.[56] In this case, plaintiff is neither the prevailing party nor has he referenced any statute or contract that would support such an award.

Mr. Lockyer's request for attorney fees is denied.

### IV. Plaintiff Lockyer's Motion To Appoint Counsel[57]

On August 9, 2010, Mr. Lockyer filed an untitled motion, the body of which states that the "outside legal help" which he previously relied upon is no longer available and consequently he requests that the court appointed a legal representative on his behalf who does not "possess an LDS Temple Recommend."[58]

As a civil litigant, Mr. Lockyer has no constitutional right to counsel.[59] Further, because the Court has granted defendants' motions to dismiss plaintiff's causes of action, the appointment of counsel issue is moot.

**Recommendation**

Based on the foregoing, the Court hereby recommends to the District Court that:

1. Defendants' Motions To Dismiss are GRANTED;

2. Plaintiff's Request For Attorney Fees is DENIED; and

3. Mr. Lockyer's Motion To Appoint Counsel is DENIED as moot.

Copies of the foregoing report and recommendation are being mailed to all

---

[56] Morganroth & Morganroth v. DeLorean 213 F.3d 1301, 1317 (10th Cir. 2000)(citing, Stewart v. Utah Public Service Comm'n., 885 P.2d 759, 782 (Utah 1994)).

[57] Document Number 5.

[58] Id. at pg. 1.

[59] Lassiter v. Dept. of Social Services, 452 U.S. 18, 25-27 (1981); see also, Carper v. DeLand, 54 F.3d 613, 616 (10th Cir. 1995).

parties who are hereby notified of their right to object. Any objection must be filed within 14 days after being served with a copy.[60] Failure to object may, upon subsequent review, constitute a waiver.

DATED this 12th day of October, 2010.

BY THE COURT:

_Brooke C. Wells_

Brooke C. Wells
United States Magistrate Judge

---

[60] Fed. R. Civ. P. 72(b)(2).